# In the United States Court of Federal Claims

No. 15-560C

(Filed: January 4, 2016)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WYANDOT NATION OF KANSAS, a/k/a WYANDOTTE TRIBE OF INDIANS, | Indian Tribe Claims for Tribal Trust Fund Mismanagement; Rule 12(b)(1) and (b)(6) Motion to Dismiss; Fiduciary Duties Owed to Indian Tribes; 28 U.S.C. § 2501; Statute of Limitations; Effect of Appropriations Act Riders; Standing. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Brian J. Leinbach*, with whom were *Walter J. Lack*, Engstrom, Lipscomb & Lack, Los Angeles, California, *Thomas V. Girardi*, Girardi & Keese, Los Angeles, California, *Gregory A. Yates*, Gregory A. Yates, P.C., Encino, California, *Mario Gonzalez*, Law Offices of Mario Gonzalez, Rapid City, South Dakota, *Gregory Smith*, Law Offices of Gregory W. Smith, Beverly Hills, California, Of Counsel, for Plaintiff.

*Laura W. Duncan*, Trial Attorney, with whom were *John C. Cruden*, Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., *Gladys Cojocari*, Office of the Solicitor, U.S. Department of the Interior, Of Counsel, for Defendant.

### OPINION AND ORDER ON
### DEFENDANT'S MOTION TO DISMISS

WHEELER, Judge.

This case involves an Indian Tribe's claims that accrued in the nineteenth century. For Indian Tribes that qualify for a "full and complete accounting" of their treaty trust funds pursuant to the American Indian Trust Fund Management Reform Act of 1994, Congress has permitted claims relating to the treaty trust funds to be brought within six years after the Government furnishes the accounting. However, in this case, Plaintiff is not a federally recognized Indian Tribe, and therefore is not entitled to an accounting. For

claims relating to cemetery land in Kansas City, Kansas, Plaintiff is not the owner of the land, and thus has no standing to assert these claims. For the reasons explained in greater detail below, Defendant's motion to dismiss must be granted.

Factual and Procedural History

Plaintiff, the Wyandot Nation of Kansas ("Wyandot Nation"), is an Indian tribe whose members trace their ancestry to the Historic Wyandott Nation and the Wyandotte Tribe of Indians. Compl. ¶ 2. The Historic Wyandott Nation's government-to-government relations with the United States were dissolved and terminated 160 years ago by the Treaty of January 31, 1855, 10 Stat. 1159 ("1855 Treaty"). Id. Following the Historic Wyandott Nation's termination, the Wyandotte Tribe of Indians was established as a reorganized tribe under Article 13 of the Treaty of February 23, 1867 ("1867 Treaty"). Id. Plaintiff claims to be both a successor-in-interest to all of the treaties entered into by the Historic Wyandott Nation with the United States and a part of the reorganized Wyandotte Tribe of Indians. Id. Plaintiff changed its name to the Wyandot Nation of Kansas in 1959 to avoid confusion with the separate, federally-recognized Wyandotte Tribe of Oklahoma. Id. ¶ 37.[1]

The Wyandot Nation's claims in this case involve treaty trust funds and trust land that the Government allegedly holds in trust for the Wyandot Nation. The funds Plaintiff claims the Government holds in trust for it fall into two categories. Id. at 69. Plaintiff's "Category One trust funds are those funds described in Schedule A of the 1867 Treaty." Id. ¶ 69. According to Plaintiff, its Category One funds ". . . were derived from the sale of Historic Wyandott Nation lands that were placed in U.S. Treasury trust accounts." Id. ¶ 72. Plaintiff's "Category Two trust funds are derived from easements for grants of rights-of-way for the use of two tracts of the Huron Cemetery trust land for Kansas City, Kansas streets since 1857." Id. ¶ 73.

The Wyandot Nation commenced this action on June 1, 2015 by filing a complaint against the United States for money damages arising from the Government's alleged breach of trust and fiduciary obligations owed to the Wyandot Nation. The complaint contains the following four causes of action: (1) breach of fiduciary duties based on a failure to provide a full, accurate, and timely accounting of Category One treaty trust funds; (2) breach of fiduciary trust responsibilities based on a failure to collect, deposit, account for, and invest trust funds that should have been collected for use of Huron Cemetery trust lands by the City of Kansas City, Kansas; (3) mismanagement of Category One treaty trust funds

---

[1] According to the Wyandot Nation, "[t]he Wyandotte Tribe of Oklahoma was formerly part of the Wyandotte Tribe of Indians and consists of members of the Wyandotte Tribe of Indians residing in Oklahoma that splintered off from the Wyandotte Tribe of Indians, and reorganized as a separate tribe under Section 3 of the 1936 Oklahoma Indian Welfare Act." Compl. ¶ 2 (citing 25 U.S.C. § 503).

and accounts; and (4) mismanagement of Category Two Huron Cemetery trust funds. <u>Id.</u> ¶¶ 75-117. Plaintiff requests full trust fund accountings from the United States based on the allegations in its first and second claims, and monetary damages from the Government based on the alleged mismanagement of Plaintiff's funds and property in its third and fourth claims.

On August 28, 2015, Defendant filed a motion to dismiss Plaintiff's complaint. In its motion, Defendant contends that Plaintiff's claims should be dismissed as untimely, for failure to allege sufficient jurisdictional facts, or for failure to state a claim upon which relief can be granted. Def.'s Mot. 12-25. Additionally, Defendant argues that Plaintiff lacks standing to assert any claims regarding the Huron Cemetery. Reply 2-9. Having now been fully briefed and argued, Defendant's motion is ready for decision.

Analysis

I.      <u>Standard of Review</u>

Jurisdiction is a threshold matter which must be established "before the court may proceed with the merits[.]" <u>Overview Books, LLC v. United States</u>, 72 Fed. Cl. 37, 40 (2006) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 88-89 (1998)). When ruling on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Court of Federal Claims ("RCFC"), the Court must accept all undisputed factual allegations as true and draw all reasonable inferences in favor of the plaintiff. <u>Estes Exp. Lines v. United States</u>, 739 F.3d 689, 692 (Fed. Cir. 2014). The burden lies with the plaintiff to establish jurisdiction through a preponderance of evidence. <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988). The Court will grant a motion to dismiss for lack of subject matter jurisdiction when it is clear beyond a doubt that there is no set of facts the plaintiff could prove that would enable this Court to grant relief. <u>See</u> <u>Frymire v. United States</u>, 51 Fed. Cl. 450, 454 (2002).

Rule 12(b)(6) authorizes this Court to dismiss an action for failure to state a claim upon which relief can be granted. Pursuant to RCFC 12(b)(6), the Court must dismiss a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his legal claim which would entitle him to relief." <u>W. Shoshone Nat. Council v. United States</u>, 73 Fed. Cl. 59, 62 (2006) <u>aff'd</u>, 279 F. App'x 980 (Fed. Cir. 2008) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 46 (1957)). A plaintiff is only required to offer "'a short and plain statement,'" showing a plausible claim for relief to survive a motion to dismiss. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley</u>, 355 U.S. 41, 47 (1957)). In reviewing a motion to dismiss, the Court must accept as true all factual allegations submitted by the plaintiff. <u>Bell Atl. Corp.</u>, 550 U.S. at 555.

3

II.   Discussion

A.  Category One 1867 Treaty Trust Fund Claims

1.  Breach of Category One Trust Fund Fiduciary Duties and Action for an Accounting

In its first cause of action, Plaintiff alleges that the United States breached its fiduciary duty to the Wyandot Nation by failing to provide a full and timely accounting of Plaintiff's Category One treaty trust funds.  Compl. ¶ 76-77.  Specifically, Plaintiff refers to Schedule A of the 1867 Treaty, which lists "the several items embraced in the sum agreed to be paid to the Wyandottes" by Article 13 of the 1867 Treaty.  Opp'n. 7.  Plaintiff claims the United States "has never made a full financial accounting of the funds described in Schedule A [Category One], or any accrued interest earned on said funds, from 1867 up to the filing date" of its complaint.  Id.  Thus, Plaintiff contends it is "entitled to a full and complete accounting" of its treaty trust funds pursuant to the American Indian Trust Fund Management Reform Act of 1994 ("1994 Act").  Compl. ¶¶ 80-84 (citing 25 U.S.C. §§ 4001-61).

The Government contends that the Wyandot Nation is not a federally recognized Indian tribe and therefore the 1994 Act does not apply to it.  Reply 14.  If Plaintiff is not entitled to an accounting under the 1994 Act, the Government argues that Plaintiff's action for an accounting is otherwise untimely and thus this Court lacks jurisdiction to consider Plaintiff's first cause of action.  The Court agrees.

Pursuant to the Federally Recognized Indian Tribe List Act of 1994 ("List Act"), "the Secretary of the Interior is charged with the responsibility of keeping a list of all federally recognized tribes."  Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103–454, § 103(6), 108 Stat 4791.  As currently codified, section 479a-1 of the List Act requires the Secretary to "publish in the Federal Register a list of all Indian tribes *which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians*."  25 U.S.C. § 479a-1 (emphasis added).  The Wyandot Nation of Kansas is not included among the 566 tribal entities currently recognized by the Secretary in the Federal Register.  Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 80 Fed. Reg. 1942 (Jan. 8, 2015).

In relevant part, the 1994 Act, the statute upon which Plaintiff relies to assert its accounting and mismanagement claims, defines the term "Indian tribe" using identical language to that found in the List Act.  25 U.S.C. § 4001(2) (defining the term "Indian tribe" to mean "any Indian tribe, band, nation, or other organized group or community . . .

4

*which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians*.") (emphasis added). The List Act and the 1994 Act were passed within eight days of each other. Both statutes describe actions required of the Secretary of the Interior for the benefit of Indian tribes. Although found in two separate statutes, it is nevertheless reasonable to interpret the use of identical language as signaling Congress's intent to refer to the same group of tribes given the fact that each statute describes the Secretary of the Interior's responsibilities vis-a-vis Indian tribes. See Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2004-05 (2012) (explaining "it is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.") (internal citations omitted); Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 232 (2007) (stating that "[a] standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning."). Accordingly, the Court holds that as a matter of law, Plaintiff is not federally recognized pursuant to the List Act and is therefore not entitled to an accounting under the 1994 Act, which limits eligible tribes to those recognized by the Secretary of the Interior.

Also, the Court notes that contrary to Plaintiff's position in this case, Plaintiff has admitted elsewhere that it is not a federally recognized tribe. See Def.'s Resp. at Ex. 3, ¶ 3 (1998 Settlement Agreement). A 1998 Settlement Agreement executed between the Wyandot Nation of Kansas and the Wyandotte Tribe of Oklahoma and subsequently approved by the Bureau of Indian Affairs pursuant to 25 U.S.C. § 81 includes the stipulation that "the Kansas Wyandot is a non-federally recognized, State of Kansas recognized, Indian Tribe. . . [.]" Id.

The Wyandot Nation acknowledges that its "first cause of action dates back to the Treaty of 1867 and the payment of trust funds in the late 1880s." Opp'n 17. Based on Plaintiff's assertions, it is apparent to the Court that Plaintiff objectively knew, or should have known of any breach of duty on the part of the Government well before June 1, 2009, the last date on which Plaintiff's claim could have accrued in order for Plaintiff's current action for an accounting to be timely. 28 U.S.C. § 2501. As Plaintiff is not entitled to an accounting pursuant to the 1994 Act, which mandates an accounting for "each tribal trust fund for which the Secretary is responsible," 25 U.S.C. § 4044, regardless of when the tribe had knowledge of any wrongdoing, the Court holds that Plaintiff's action for an accounting is untimely and therefore this Court lacks jurisdiction to consider Plaintiff's first cause of action.

> 2. Category One Treaty Trust Funds Mismanagement Claim and Request for Monetary Damages

In its third cause of action, Plaintiff argues that "it has been deprived of substantial sums of money that it would have received from its Category One treaty trust funds, had they not been mismanaged by the Federal Government." Compl. ¶ 107. As detailed above, Plaintiff claims its Category One trust funds stem from payments listed under Schedule A of the 1867 Treaty. Admittedly, Plaintiff "is uncertain as to the exact amount of damages to which it is entitled." Id. ¶ 108. Nevertheless, Plaintiff contends that "[t]he fact that uncertainty exists as to the actual amount of damages does not preclude Plaintiff's legal right to recover." Opp'n. 28. The Government argues that Plaintiff's Schedule A, 1867 Treaty trust fund mismanagement claim is barred by the statute of limitations because those funds were disbursed and paid out in 1873 and 1888, and therefore accrued no later than 1888. Def.'s Mot. 14-15. Thus, Defendant argues, Plaintiff had until 1894 to advance its Category One claims. Id. at 14.

The Wyandot Nation argues that its mismanagement claim is timely because under the various Department of Interior Appropriations Act riders issued each year from 1990 through 2014, claims for losses due to mismanagement of trust funds do not accrue until the affected tribe or individual Indian has been furnished with an accounting. See, e.g., Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, § 2, 128 Stat. 5, 305-306 ("the Appropriations Act"). Here, however, the Wyandot Nation is not entitled to an accounting and therefore cannot rely on the Appropriations Act riders to delay the accrual of its Category One treaty trust fund claim.

"A cause of action against the government has first accrued when all of the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (internal citation omitted). Plaintiff alleges that the United States "supposedly paid" the Wyandot Nation its Schedule A funds in 1888. Compl. ¶ 78. Based on Plaintiff's own assertion, it is apparent to the Court that Plaintiff objectively knew or should have known of the events giving rise to its trust fund mismanagement claim by the late 1880s. Thus, as Plaintiff is not entitled to an accounting under the 1994 Act that would delay the accrual of its mismanagement claim, its trust fund mismanagement claim is barred by this Court's six-year statute of limitations and must be dismissed for lack of jurisdiction. 28 U.S.C. § 2501.

B.  Category Two 1867 Treaty Huron Cemetery Easement Claims

    1.  Breach of Fiduciary Duties to Collect and Manage Funds and Action for an Accounting

In its second cause of action, Plaintiff alleges that the United States has breached its duty to collect and manage Plaintiff's Category Two, Huron Cemetery trust funds and has failed to provide a full, accurate, and timely accounting of those funds.  According to Plaintiff, the Huron Cemetery, an Indian burial ground located on a tract of land in Kansas City, "is trust land, the legal title of which is held by the Federal Government, and the beneficial or equitable title of which was held for the Wyandotte Tribe of Indians."  Compl. ¶ 58.  Plaintiff argues that the Government holds the Huron Cemetery as "trust land in reservation status" for the Wyandot Nation because its enrolled members are offspring of the Wyandotte Tribe of Indians.  Id. ¶¶ 59-60.  As with Plaintiff's first cause of action, the Wyandot Nation claims it is entitled to an audit of its Category Two trust funds and accounts pursuant to the 1994 Act.  Id. ¶ 101.  Specifically, Plaintiff requests an accounting of funds that were or should have been "paid to Plaintiff for easements for grants of rights-of-way over and across two tracts of Huron Cemetery trust lands."  Opp'n 17.

The Government argues that the Wyandot Nation lacks standing to assert its Huron Cemetery claims because it "is not a federally-recognized Indian tribe and is not the beneficial owner of the Huron Cemetery."  Reply at 4.  Additionally, the Government argues that given Plaintiff's prior representations in the United District Court for the District of Kansas, Plaintiff knew or should have known of the right-of-way encroachments on the Huron Cemetery land more than six years ago.  Def.'s Resp. 2-3, Ex. 4 at 24 (quoting an affidavit by Janith K. English, a Chief of the Wyandot Nation of Kansas, swearing that "Kansas Wyandots have practiced religious ceremonies, including traditional prayers at the Huron Cemetery, since its establishment in 1843 to the present time.").

        a.  Standing

The Federal Circuit has held that although the Court of Federal Claims is an Article I court, this Court "applies the same standing requirements enforced by other federal courts created under Article III."  Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003).  Whether a plaintiff has met these standing requirements is "a threshold jurisdictional issue," Myers Investigative & Security Services v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002), such that a "lack of standing precludes a ruling on the merits." Media Techs. Licensing LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003). To establish standing, a plaintiff must show:  (1) that it has suffered an "injury in fact," an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) that there is "a causal connection between

7

the injury and the conduct complained of," and (3) that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-66 (1992) (internal citations and quotation marks omitted).

As the party invoking the jurisdiction of this Court, the Wyandot Nation bears the burden to establish that it has standing to pursue its Huron Cemetery claims. Myers, 275 F.3d at 1369 (citing, *inter alia*, Lujan, 504 U.S. at 561). Plaintiff has not met this burden. In the 1998 Settlement Agreement, both the Oklahoma Wyandotte and the Kansas Wyandot agreed "that the United States is the record titleholder of the Huron Cemetery." Def.'s Resp. at Ex. 2, Part 1, § 2 (1998 Settlement Agreement). Plaintiff does not contradict this statement in the present litigation. Plaintiff does however contradict its prior assertion that "the United States claims to hold title to the Huron Cemetery in trust for the Oklahoma Wyandotte. . . [.]" Id. § 5. Based on this prior assertion, Plaintiff and the Oklahoma Wyandotte agreed that the Oklahoma Wyandotte would assume full responsibility for executing whatever documents were necessary to obtain the United States' approval of their 1998 Settlement Agreement involving the future use and care of the Huron Cemetery. Id. Although Plaintiff now maintains that it has a beneficial interest in the Huron Cemetery, Plaintiff's prior representations in federal court directly contradict its ability to assert a claim. See Rocovich v. United States, 933 F.2d 991, 993-94 (Fed. Cir. 1991) (explaining that when jurisdiction is disputed, this Court may look beyond the pleadings and inquire into jurisdictional facts to determine whether jurisdiction exists). Given Plaintiff's contradictory statements, Plaintiff has not shown that it has suffered an actual and concrete injury in fact. Therefore, the Court holds that Plaintiff lacks standing to assert its Huron Cemetery claims.

### b.  Subject Matter Jurisdiction

Even assuming Plaintiff did have standing to bring its Huron Cemetery claims, those claims are barred by this Court's six-year statute of limitations. 28 U.S.C. § 2501. As an exhibit to its complaint, Plaintiff included a July 12, 1959 newspaper article published in the Kansas City Kansan that includes photos of the portions of the Huron Cemetery over which the city built roads using easements for rights-of-way granted by the Federal Government. Compl. at Ex. B. Given the sworn statement from Ms. Janith K. English, a Chief of the Wyandot Nation of Kansas, that the Wyandot Nation has been using the Huron Cemetery since 1843, it is apparent to the Court that Plaintiff knew or should have known of the events giving rise to its Huron Cemetery claims at some point in the 20th century, if not the 19th century, thereby triggering the statute of limitations on its Huron Cemetery claims. See Menominee Tribe of Indians v. United States, 726 F.2d 718, 720 (Fed. Cir. 1984) (explaining that, under 28 U.S.C. § 2501, the six-year statute of limitation runs from when plaintiff's claim "first accrue[s]").

As with its Category One claims, Plaintiff argues that because it "has never received an accounting from the United States pertaining to the trust funds arising from the use of the Huron Cemetery lands, no statute of limitations has yet accrued on Plaintiff's Huron Cemetery Claims." Pl.'s Sur-Reply 10.  However, as previously explained, Plaintiff is not entitled to an accounting under the 1994 Act.  Accordingly, Plaintiff is also not entitled to a tolling of its claims pursuant to the Appropriations Acts.  Therefore, Plaintiff's Category Two, Huron Cemetery breach of fiduciary duty and accounting claim is patently untimely and this Court lacks jurisdiction to consider it.

> 2.  Mismanagement of Huron Cemetery Funds and Request for Monetary Damages

In its fourth cause of action, Plaintiff seeks money damages for the Government's alleged mismanagement of Plaintiff's Huron Cemetery trust funds.  For the reasons stated above, Plaintiff lacks standing to bring its fourth cause of action as it has not shown that it has a legally protected interest in the Huron Cemetery.  Even if Plaintiff could establish standing, its fourth claim is untimely for the same reasons as are its first three causes of action.  Finally, Plaintiff's fourth claim fails to state a claim upon which this Court can grant relief.  Given that Plaintiff has failed to show that it has any legal interest in the Huron Cemetery, Plaintiff will necessarily be unable to prove a "set of facts in support of [its] legal claim which would entitle [Plaintiff] to relief." W. Shoshone Nat. Council, 73 Fed. Cl. at 62 (quoting Conley, 355 U.S. at 46).

Conclusion

For the reasons explained above, the Government's motion to dismiss Plaintiff's claims is GRANTED.  The Clerk is directed to dismiss Plaintiff's complaint without prejudice.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge